This decision was not selected for publication in the New Mexico Appellate Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      **NO. 32,829**

**AARON DAUGHERTY,**

Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant


Gary K. King, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee


Mary Lynne Newell
Silver City, NM

for Amicus Curiae
New Mexico District Attorneys' Association

**DECISION**

**KENNEDY, Justice, sitting by designation.**

{1} On Defendant's motion for rehearing, the Decision previously filed in this matter on June 20, 2013, is hereby withdrawn and the following substituted in its place. The motion for rehearing is otherwise denied.

{2} On October 22, 2010, a jury convicted Defendant Aaron Daugherty of first-degree murder in the shooting deaths of his girlfriend, Valerie York, and her friend, Mark Koenig. The district court sentenced Daugherty to two consecutive life sentences, thus giving this Court exclusive jurisdiction to hear his direct appeal. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); *accord* Rule 12-102(A)(1) NMRA. Defendant argues that (1) the district court erred in instructing the jury on felony murder as an alternative theory to first-degree murder; (2) assuming there was insufficient evidence to support a felony murder conviction, the general verdict was tainted and must be overturned; (3) there was insufficient evidence to convict Defendant of willful and deliberate first-degree murder; and (4)

the district court abused its discretion in sentencing Defendant to consecutive sentences rather than concurrent sentences.

**{3}** We find no error or abuse of discretion by the district court. Because we find that there was sufficient evidence for a jury to find Defendant guilty of felony murder and of willful and deliberate murder, we do not reach the issue of whether the jury's general verdict for first-degree murder would have to be overturned if there had been insufficient evidence to support a felony murder conviction. This appeal raises no novel issues of law, and we therefore issue this unpublished decision affirming Defendant's convictions and sentences pursuant to Rule 12-405(B) NMRA.

## I. BACKGROUND

**{4}** The following evidence was presented at trial. Just before 3:00 a.m. on June 13, 2009, a New Mexico State Police officer on patrol in Roswell, New Mexico, heard the sound of gunshots in a residential neighborhood. Officers also received a call that someone had fired a gun into a mobile home in the area. When officers arrived at the mobile home, they found Valerie York and Mark Koenig dead due to gunshot wounds. York's body was found slumped across the doorway of the mobile home, and Koenig's was found inside the mobile home a few feet away from York's.

**{5}** Defendant and York had been in a relationship for approximately two years

prior to the murders, and they had a son together. On the day of the killings, Defendant picked York up at work and was intending to watch movies at home with her. Instead, York told him she was going to Koenig's, and Defendant remained at home with the couple's son. Defendant woke up late that night to find that York had not returned home, and he proceeded to walk to Koenig's mobile home where he witnessed York and Koenig kissing on the porch. Enraged, Defendant began walking home and sent York a text message asking, "Are you finished kissing him yet?" In a post-arrest interview, Defendant told officers he tried to calm down on the walk home, and then smoked a cigarette and paced around his house. Defendant then exchanged several more text messages with York, and he claimed that her responses led him to believe she and Koenig had engaged in sexual relations.[1] Defendant claimed he "clicked," retrieved his gun from a shelf inside his closet, loaded it with ammunition he kept in his car, and drove back to Koenig's mobile home.[2]

---

[1]Defendant and York exchanged the following messages:
York: "Yeah. And it happened. . . . What can I say?"
Defendant: "[F]ucking why?"
York: "Honestly, because he showed me some attention."
(The dialogue is taken from the transcript of Defendant's testimony and may not reflect the punctuation as it appeared in the text messages.)

[2]The parties dispute whether the gun was loaded before Defendant pulled it from his closet and headed to Koenig's home. Defendant's initial statement to the police indicates that he kept the gun unloaded, but at trial he claimed that he kept the

4

{6}  When Defendant arrived at Koenig's mobile home, he walked towards York, cocked the gun, shot at her, and missed. Defendant cocked the gun again and shot York, then cocked it once more and shot at Koenig. Defendant then entered the mobile home and shot each victim again. The evidence showed that each victim sustained two shots, but the sequence of the shots could not be inferred from the evidence. York was shot twice in the head, and Koenig was shot once in the head and once in the neck. The State's forensic pathologist testified that although all four shots were likely fatal, the evidence was inconclusive as to whether Defendant fired the fatal shots before or after he entered the mobile home.

{7}  After entering the mobile home and firing the second set of shots, Defendant looked at two witnesses who were in the home, told them he had no problems with them, and walked out. Defendant drove home, picked up his son, and left for his mother's house in Las Cruces, New Mexico. One of the witnesses called police, identified Defendant as the shooter, and provided a description of Defendant's car. When officers stopped Defendant, Defendant told them, "I did it. I shot them."

{8}  At trial, the State alleged first-degree murder under the alternate theories of willful and deliberate murder and felony murder. The defense called a forensic

gun loaded and that he was interrupted during his police interview before he had time to clarify that fact for officers.

5

psychologist who testified that Defendant was overwhelmed with emotion and was therefore provoked into committing the killings. She further testified that Defendant did not have a total loss of self control at the time of the shootings but that he "was not in good control." In rebuttal, the State called a forensic psychologist who testified that Defendant's actions were premeditated and that the shootings were preceded and accompanied by a series of deliberate and purposeful actions that "required some thought and . . . some planning." The psychologist based these conclusions on Defendant's previous self-mutilation and on his comments and acts of rage related to York's previous infidelity. The psychologist further testified that Defendant had passed up several opportunities to stop his actions and had persisted, culminating in the final shots he fired on his way out the door to make sure the victims were dead.

{9}     At trial, the jury was instructed on felony murder, with aggravated burglary as the predicate felony, and alternatively on willful and deliberate murder with step-down instructions for second-degree murder and voluntary manslaughter. The jury found Defendant guilty of two counts of first-degree murder under a general verdict form, and the district court sentenced Defendant to two consecutive sentences of thirty years to life in prison. This direct appeal followed.

## II.     THE FELONY MURDER INSTRUCTION

{10} Defendant argues the "trial court erred in instructing the jury on felony murder as an alternative theory of first degree murder." He argues that the State failed to present sufficient evidence of causation of death to justify instructing the jury on felony murder so that consequently aggravated burglary is not an appropriate predicate to felony murder in this case. Defendant argues that the burglary was not a factual predicate to the murder because "either of the two shots to each victim would have been fatal" and "[t]he victims were most likely already dead when [Defendant] entered the trailer for the second shots." Defendant further maintains that the State did not prove the aggravated burglary because "nothing [in the evidence] indicated that [Defendant] went over to the trailer of the victim with an intent to commit burglary."

{11} New Mexico's felony murder doctrine is based on the idea that "a killing in the commission or attempted commission of a felony is deserving of more serious punishment than other killings in which the killer's mental state might be similar but the circumstances of the killing are not as grave." *See State v. Ortega*, 112 N.M. 554, 565, 817 P.2d 1196, 1207 (1991), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. Felony murder consists of a second-degree murder committed in the course of a dangerous felony.

*See State v. Campos*, 1996-NMSC-043, ¶ 17, 122 N.M. 148, 921 P.2d 1266; NMSA 1978, § 30-2-1(A)(2) (1994). "[T]he legislature has elected to treat this species of second-degree murder as murder in the first degree." *State v. Nieto*, 2000-NMSC-031, ¶ 13, 129 N.M. 688, 12 P.3d 442.

{12}     "'[W]ithout sufficient provocation' is an essential element of second-degree murder [and therefore of felony murder] when the jury is instructed on voluntary manslaughter as a potential lesser-included offense." *State v. Swick*, 2012-NMSC-018, ¶ 55, 279 P.3d 747. And as we recently held in *State v. Benjamin Montoya*, 2013-NMSC-020, ¶ 20, __ P.3d __, "lack of provocation [is] as much an element of second-degree murder as an included offense of felony murder as it [is] of stand-alone second-degree murder." At trial, the district court instructed the jury on voluntary manslaughter as a step-down to willful and deliberate murder. As a preliminary matter, we note that Defendant did not request a felony murder instruction including the element "without sufficient provocation," and he never raised the issue on appeal. Regardless, we review for fundamental error and conclude that there was insufficient evidence of provocation to entitle Defendant to such an instruction. *See State v. Stills*, 1998-NMSC-009, ¶¶ 36-37, 125 N.M. 66, 957 P.2d 51 (recognizing the principle that "[m]ere sudden anger or heat of passion will not reduce the killing from murder to

manslaughter" and that in order to justify giving a voluntary manslaughter instruction the trial judge must determine not only that there was evidence Defendant was adequately provoked into a loss of self control but that an "ordinary person of average disposition" in the same situation would have suffered a loss of self control (internal quotation marks and citation omitted)); *see also* UJI 14-222 NMRA ("The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.").

{13} The evidence in this case did not create a jury issue on either of the essential elements necessary to justify a jury instruction on whether an intentional homicide could be lawfully mitigated from murder to manslaughter as a result of legally sufficient provocation and loss of control. First, neither the testimony of Defendant's forensic psychologist nor any other evidence supported a theory that Defendant personally was provoked into a loss of self control. The psychologist testified that Defendant did not lose his self control; at most, he "was not in good control." The evidence was undisputed that, after witnessing York and Koenig kissing on the porch, Defendant returned home, exchanged text messages with York, spent time thinking, retrieved his gun, drove to Koenig's home with a loaded gun, parked his car, got out, walked to the mobile home, and methodically shot each victim—recocking his gun

9

after each shot and concluding by shooting each victim a final time, ensuring that neither could survive. Second and of equal importance, there was no evidence or reasonable inference from the evidence that those same circumstances would have provoked an ordinary person of average disposition into a loss of self control.

**{14}** We address the district court's denial of Defendant's motion for a directed verdict and consider the sufficiency of the State's evidence that the aggravated burglary was a proximate cause of both murders. We then turn to a discussion of whether aggravated burglary is an appropriate predicate to felony murder.

**A. The District Court Did Not Err in Denying Defendant's Motion for a Directed Verdict.**

**{15}** The district court instructed the jury that in order to find Defendant guilty of felony murder with the predicate felony of aggravated burglary, the jury had to find the following beyond a reasonable doubt: (1) Defendant committed aggravated burglary under circumstances or in a manner dangerous to human life, (2) Defendant caused the death of each victim during the commission of the aggravated burglary, (3) Defendant did so with the intent to kill or knew his acts created a strong probability of death or great bodily harm, and (4) this happened in New Mexico on or about the date specified in the criminal information. *See* UJI 14-202 NMRA; *see also* UJI 14-1632 NMRA. The crime of aggravated burglary requires "the unauthorized entry of

10

any . . . dwelling . . . with intent to commit any felony or theft therein." NMSA 1978, § 30-16-4 (1963). The person must either be armed with a deadly weapon, arm himself with a deadly weapon after entering, or commit a battery upon any person while in such place or in entering or leaving such place. *Id.*

{16} Defendant challenges the sufficiency of the evidence establishing causation and intent. Defendant essentially argues that the district court erred in denying his motion for a directed verdict, given that one view of the evidence would not support a felony murder conviction.

{17} "We review denials of directed verdicts by asking whether sufficient evidence was adduced to support the underlying charge." *State v. Johnson*, 2010-NMSC-016, ¶ 57, 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted).

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. . . . [W]e view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* (internal quotation marks and citation omitted). Where a jury's verdict is supported by substantial evidence, the existence of evidence contrary to the verdict does not require a directed verdict or a reversal of a conviction. *See id.* ¶¶ 58-59.

11

{18} Defendant argues that the testimony of the forensic pathologist established that the victims were likely already dead before Defendant entered Koenig's mobile home. This argument fails, given that the pathologist testified that, although all four shots were probably fatal, the first shots on each victim may not have been immediately fatal. Even if Defendant's first shots at the victims would ultimately have been fatal, Defendant's subsequent acts to hasten their deaths still establish causation and amount to murder. *See State v. Adam Montoya,* 2003-NMSC-004, ¶ 19, 133 N.M. 84, 61 P.3d 793 ("[A]n individual may be a legal cause of death even though other significant causes significantly contributed to the cause of death.").[3]

{19} The State also presented sufficient evidence to prove that Defendant entered the mobile home and shot at the victims with the intent to kill or that he knew his acts created a strong probability of death or great bodily harm. In determining whether the Defendant made a calculated judgment to kill York and Koenig, the jury was permitted to infer intent from circumstantial evidence, as direct evidence of a defendant's state of mind is not required. *See State v. Nathaniel Duran,*

[3]Additionally, the felony murder analysis is the same whether or not the first shots were fatal. The State presented sufficient evidence to prove, beyond a reasonable doubt, that Defendant entered Koenig's mobile home while armed with a deadly weapon and with the intent to commit a battery on each of the victims. The predicate crime of aggravated burglary was therefore complete at the time Defendant crossed the threshold of the mobile home. Section 30-16-4.

12

2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). Defendant testified that when he went to shoot York and Koenig, he was aiming to kill them, stating, "[I]f I'm shooting at something, I'm shooting to kill." Defendant's testimony as well as the testimony of witnesses also established that Defendant inflicted potentially fatal wounds on his victims before stepping inside the mobile home to shoot them again. *See State v. Flores*, 2010-NMSC-002, ¶¶ 21-22, 147 N.M. 542, 226 P.3d 641 (finding an attempt at "overkill" among the evidence sufficient to uphold a finding of intent). These facts support a reasonable inference that Defendant entered the mobile home and fired the second set of shots in order to ensure his victims were dead.

{20}    We conclude that the State presented sufficient evidence at trial to prove that Defendant committed aggravated burglary in a manner dangerous to human life, that the aggravated burglary was a proximate cause of the murders, and that Defendant entered the mobile home with the intent to shoot and kill the victims once he was inside. Because there was sufficient evidence for a jury to find beyond a reasonable doubt that the Defendant fired the fatal shots after he entered the mobile home and that he did so with the intent to kill his victims, we hold that the district court did not err

13

in denying Defendant's motion for a directed verdict.

**B.      Using Aggravated Burglary as a Predicate Crime to Felony Murder Did Not Violate the Collateral Felony Doctrine.**

{21}      This Court requested supplemental briefing to address Defendant's argument that he did not have the requisite intent to support convictions on the State's felony murder theory.  Specifically, we asked for briefing on the question of whether aggravated burglary is a permissible collateral felony for felony murder, even in cases where the crime intended to be committed upon unauthorized entry of the structure is the same murder that forms the basis of the felony murder conviction.

{22}      Under the collateral felony doctrine, a person cannot be tried for felony murder if the predicate felony is a lesser included offense of second-degree murder. *See Campos*, 1996-NMSC-043, ¶ 19 ("[T]he appropriate limitation imposed by the collateral-felony doctrine in New Mexico is simply that the predicate felony cannot be a lesser-included offense of second-degree murder.").  In determining whether the collateral felony requirement is met, New Mexico courts must determine whether the predicate felony is a lesser-included offense of second-degree murder. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 11, 141 N.M. 801, 161 P.3d 846.  Facing a related challenge based on the collateral felony doctrine, this Court outlined the proper approach, noting that we are "require[d] . . . to look *not to the nature of the act*, but

14

rather to whether the legislature intended that a particular felony should be able to serve as a predicate to felony murder." *Id.* ¶¶ 14-15 (internal quotation marks and citation omitted) (holding that the use of aggravated burglary as predicate felony to felony murder did not violate the collateral felony doctrine, even though the factor raising simple burglary to aggravated burglary was the conduct underlying second-degree murder).

{23}    Applying the strict elements test, we find that the crime of aggravated burglary is an appropriate predicate to felony murder. Because it is possible to commit second-degree murder without ever committing aggravated burglary, it is clear to us that the felony murder statute does not prohibit aggravated burglary from being used as the predicate to felony murder in this case. That is, each crime has at least one element which the other lacks. *See id.* ¶ 15 (citing NMSA 1978, § 30-16-3 (1971)) (stating that two elements of burglary never contained in second-degree murder are (1) the unauthorized entry of a structure, and (2) the intent to commit a felony therein).[4]

---

[4]The State argues that "[e]ven if the strict elements test is not applied in the abstract and, instead, the elements are viewed in light of the State's theory of guilt, the aggravated burglary . . . is a proper predicate for felony murder." The State aptly notes that, even given shared intent between burglary and second-degree murder, burglary requires unauthorized entry of a dwelling, which is not an element of second-degree murder, and second-degree murder requires the killing, which is not an element of burglary.

Therefore, we hold that the district court did not violate the collateral felony doctrine in using aggravated burglary as a predicate crime to the felony murders.

## III.    SUFFICIENCY OF THE EVIDENCE

{24}    Defendant argues that there was insufficient evidence to establish beyond a reasonable doubt that he shot York and Koenig with the deliberate intent to kill them. Defendant claims that the evidence "support[s] a rash and impulsive crime as a result of discovered infidelity" but that his actions did not constitute willful and deliberate first-degree murder.

{25}    "Our substantial evidence review of the sufficiency of the evidence to support a conviction must take into account both the jury's fundamental role as factfinder in our system of justice and the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *Flores*, 2010-NMSC-002, ¶ 2. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by Benjamin Montoya*, 2013-NMSC-020, ¶ 54.  This Court "view[s] the

evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{26}** With the above guidelines in mind, we address Defendant's challenge. Because Defendant admitted to killing the victims, we need only to consider whether he did so with the deliberate intention of taking their lives. *See* NMSA 1978, § 30-2-1(A)(1) (1994); *see also State v. Adonis*, 2008-NMSC-059, ¶ 14, 145 N.M. 102, 194 P.3d 717 (distinguishing between first- and second-degree murder based on the level of intent that must be proved).[5] "'The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of actions.'" *State v. Largo*, 2012-NMSC-015, ¶ 32, 278 P.3d 532; *see* UJI 14-201. Although deliberate intent requires a "'calculated judgment'" to kill, the weighing required for deliberate intent "'may be arrived at in a short period of time.'" *Largo*, 2012-NMSC-015, ¶ 32; *see* UJI 14-201.

**{27}** In *Cunningham*, this Court upheld a conviction for willful and deliberate

---

[5]The district court instructed the jury that, in order to find Defendant guilty of first-degree murder, it had to find beyond a reasonable doubt that (1) Defendant killed the victims, (2) he did so with the deliberate intention of taking their lives, and (3) this happened in New Mexico on or about the date specified in the criminal information. *See* § 30-2-1; *accord* UJI 14-201 NMRA.

17

murder because the defendant shot the victim with one gun, retrieved a different gun, and shot the victim a second time. *See* 2000-NMSC-009, ¶¶ 25, 28. This evidence contributed to our holding that "[a] reasonable juror could have concluded that this was an act of a man who had decided as a result of careful thought and the weighing of the consideration that he was going to take the life of [the victim] . . . by firing the final shot" while the victim was incapacitated and defenseless. *Id.* ¶ 28 (internal quotation marks and citation omitted).

**{28}** In this case, Defendant also shot and hit his victims before taking additional steps and then firing another shot at each of them. It was reasonable for the jury to infer deliberate intent from this second round of coup de grace (kill shots), *see, e.g.*, *Flores*, 2010-NMSC-002, ¶¶ 21-22 (citing multiple examples of juries' inferences of deliberate intent); and, because Defendant took the same steps with each killing, it was reasonable for the jury to infer deliberate intent for each of them. Defendant also testified that, after seeing the victims kissing, he walked home, smoked a cigarette, and exchanged text messages with York before retrieving his gun and driving back to Koenig's mobile home. This series of events implies premeditation and deliberation. Defendant had many opportunities to cool down but, despite this, persisted in gathering his weapon and driving back to Koenig's mobile home before shooting his

18

defenseless victims. *See State v. Begay*, 1998-NMSC-029, ¶¶ 45-46, 125 N.M. 541, 964 P.2d 102 (recognizing the fact that the defendant took steps to arm himself as evidence to uphold a finding of deliberation).

{29} The jury was free to reject Defendant's argument that he acted out of emotional distress and not as a result of premeditation and deliberation. Examining the testimony and physical evidence in the light most favorable to the jury's verdict, we find that there was sufficient evidence to convict Defendant of willful and deliberate first-degree murder notwithstanding the existence of a contrary view of the evidence. *See Cunningham*, 2000-NMSC-009, ¶ 30 ("We will not substitute our judgment for that of the trier of fact as long as there is sufficient evidence to support the verdict.").

**IV.    CONSECUTIVE SENTENCES**

{30} Defendant argues that the district court abused its discretion in imposing consecutive sentences because it failed to consider the mitigating evidence, including Defendant's past military service, the fact that he lacked a criminal record, his devotion to his child, his age, and his remorse.

{31} We review the district court's sentencing for abuse of discretion. *See State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491. "Judicial discretion is abused if the action taken by the trial court is arbitrary or capricious. . . . Such abuse

19

of discretion will not be presumed; it must be affirmatively established." *Id.* (internal quotation marks and citation omitted). "Apart from double jeopardy considerations, whether multiple sentences for multiple offenses run concurrently or consecutively is a matter resting in the sound discretion of the trial court." *State v. Allen*, 2000-NMSC-002, ¶ 91, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted).

**{32}** Defendant quotes the district court's statement during sentencing and contends that the district court abused its discretion when it imposed consecutive sentences because the court was under the mistaken belief that it was required by law to impose consecutive sentences. We disagree. After considering competing viewpoints from the victims' and Defendant's families and friends regarding sentencing, and specifically whether the life sentences should run concurrently or consecutively, the district court made the following statement when announcing its decision:

> I have my whole adult life sought to respect and protect the system of justice. In this case, Mr. Daugherty was ably represented. His counsel raised the issues of provocation and the influence of his military service. And the jury heard those things and I believe weighed them.
>
> Because of my dedication to the system of justice, I respect the jury's verdict. And I respect that they found Mr. Daugherty guilty of two counts of deliberate willful first degree murder. I do not believe that the acts were unitary. I believe that there were two lives, two separate lives.

It shall be the judgment and sentence of this court that Aaron Daugherty be confined in the department of corrections for a term of 30 years to life as to Count 1 for the deliberate killing of Valerie York, that he be confined to the department of corrections for a period of 30 years to life for the first degree murder of Mark Koenig, and that those sentences be consecutive to one another.

I act not from hate. I act from a sense of justice. And I think the families should do likewise. We shall be in recess.

We do not interpret the district court to have believed that it was bound by law to impose consecutive sentences. Instead, after listening to statements from the families and having considered the trial as a whole, the district court exercised its discretion and decided that consecutive sentencing was a just result. The district court did not misapply the law, and therefore it did not abuse its discretion in imposing consecutive sentences for the two murders Defendant committed.

## V. CONCLUSION

{33} For the reasons explained above, we affirm Defendant's convictions and sentences for first-degree murder.

{34} **IT IS SO ORDERED.**

_____
**PAUL J. KENNEDY, Justice,**
**sitting by designation**

**WE CONCUR:**

21

_____
**PETRA JIMENEZ MAES, Chief Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**