This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: June 15, 2026**

**No. S-1-SC-40793**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LEE MARCO CUELLAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt M. Baca, District Judge**

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

## DECISION

**THOMSON, Justice.**

**{1}** Defendant Lee Cuellar appeals his conviction for the willful and deliberate first-degree murder of his wife, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994). He argues that the district court committed reversible error in permitting the State to present expert testimony during its case-in-chief, which he claims was irrelevant at the time it

was offered and was therefore unlawful anticipatory rebuttal evidence. We conclude that (1) the State's expert testimony was relevant to the State's case-in-chief and (2) even if, as Defendant contends, the testimony was proper rebuttal evidence, the district court has discretion to vary the order of trial and order of proof. As the issues presented on appeal have been previously decided by the Court, and because the district court committed no error, we affirm by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## I.    BACKGROUND

**{2}**    Defendant killed his wife, Rosalejandra Cisneros-Cuellar, on the morning of May 23, 2021, and admitted to the murder to police within hours. He told the police she had appeared to be a demon, and that he intended to kill himself after killing her. Given these admissions, the central issue at trial was not whether Defendant killed his wife, but whether Defendant possessed the deliberate intent required for a first-degree murder conviction.

**{3}**    Leading up to trial, defense counsel hired a forensic psychologist, Dr. Samuel Roll, to examine Defendant and testify as an expert witness. Dr. Roll's expert report concluded that Defendant's psychological issues, including post-traumatic stress disorder (PTSD) and hallucinations, significantly impaired his capacity to perceive events and people realistically and prevented him from using his mind to make plans and decisions. The State hired its own forensic psychologist to examine Defendant and testify as an expert witness on specific intent. The State moved the court for an order authorizing its expert to meet and examine Defendant. The motion was denied and the State's expert instead reviewed the report prepared by Dr. Roll, along with discovery materials.

**{4}**    The State's theory at the first trial was that Defendant planned to kill his younger wife out of jealousy and insecurity over her increased independence as she developed her own career, made her own friends, and sought an education. Defense counsel provided an alternative theory: Defendant suffered from PTSD and other mental health issues and only ever formed a plan to kill himself, not his wife.

**{5}**    Several days into trial, Defendant moved the district court to prohibit the State's expert from testifying during the State's case-in-chief. Defendant argued that the State's expert could only properly testify on rebuttal, because the State intended to elicit testimony on ability to form deliberate intent, which Defendant posited would necessarily be based on Dr. Roll's expert report.[1] Defendant made two arguments to support delaying the testimony: (1) testimony on ability to form deliberate intent was irrelevant

---

[1]Defendant also argued that the expert witness intended to attack Dr. Roll's methodologies, which would not be relevant until after the report was admitted as evidence. The trial court disposed of this argument after the State clarified it did not intend to attack Dr. Roll's report. Although Defendant raises this issue again on appeal, he provides no citation indicating where the State attacked Dr. Roll's report. We therefore decline to review the issue. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (declining to rule on "an inadequately briefed issue" to prevent straining judicial resources and to limit the risk of error).

and therefore inadmissible until Defendant presented his case and claimed he was unable to form deliberate intent, and (2) as a matter of proper trial order, the evidence was only proper as rebuttal evidence, after Defendant had introduced Dr. Roll's report. The State addressed Defendant's concern, in part, by agreeing that its expert would not base any of his opinion on Dr. Roll's report, and would instead limit his opinions to a review of the discovery, which included lapel footage, police reports, medical records, and detective interviews with Defendant.

**{6}**     The court denied Defendant's motion, reasoning that the jury had to determine whether Defendant acted with deliberate intent, and the State was using its expert to attempt to show Defendant was capable of acting with deliberate intent. The State's expert was thus permitted to testify during the State's case-in-chief. However, shortly after the State's expert testified, the first trial ended in a mistrial for reasons unrelated to this appeal.

**{7}**     In Defendant's second trial, both parties advanced substantially the same theories. Despite the similar strategy of both trials, in the second trial defense counsel did not object to the State's expert testifying during the State's case-in-chief. The State's expert opined that psychiatric disorders do not necessarily prevent a person from forming deliberate intent. When defense counsel presented its case, Dr. Roll opined that Defendant was not "able to use his mind to make plans and make decisions."

**{8}**     The jury found Defendant guilty of willful and deliberate first-degree murder. Defendant now appeals his conviction, reiterating arguments from the first trial that were not renewed at the second trial. Specifically, he argues that the district court erred by admitting irrelevant evidence which violated the prescribed order of criminal trials.

## II.     DISCUSSION

**{9}**     Where preserved, we review a court's evidentiary decisions for an abuse of discretion. *State v. Allen*, 2000-NMSC-002, ¶ 17, 128 N.M. 482, 994 P.2d 728. While both parties agree the issue was preserved, both point only to motions and hearings from the first trial. Neither party provides a citation indicating the arguments raised here were preserved in the second trial. The Court will not search the record to find whether an issue was preserved. *See id.* ¶ 113. Because there is no evidence the arguments here were preserved for review, we cannot review the district court's decision for an abuse of discretion. *See State v. Cordova*, 1999-NMCA-117, ¶ 28, 128 N.M. 390, 993 P.2d 104 (explaining objections made during the first trial do not preserve an issue for appeal from a subsequent trial). However, this Court may review unpreserved evidentiary questions for either plain error or fundamental error. *State v. Rojo*, 1999-NMSC-001, ¶ 45, 126 N.M. 438, 971 P.2d 829. While we are under no obligation to review an unpreserved issue for error where neither party has made such argument, *see State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (noting that our courts do not typically perform a review "not invited by the appellant"), we nevertheless consider the argument here, because this is a direct appeal as of right from a first-degree murder conviction. *See* N.M. Const. art. VI, § 2 (providing a direct right of appeal to this Court from a sentence of death or life imprisonment).

**{10}** "The first step in a plain or fundamental error analysis is to determine whether the evidence in question was erroneously admitted." *State v. Astorga*, 2015-NMSC-007, ¶ 50, 343 P.3d 1245. *See also Campos v. Bravo*, 2007-NMSC-021, ¶ 8, 141 N.M. 801, 161 P.3d 846 ("[W]e first determine if error occurred; if so, we next determine whether that error was fundamental."). If there was error, we must then consider whether the "admission of the evidence in question creates grave doubts concerning the validity of the verdict." *Astorga*, 2015-NMSC-007, ¶ 49 (internal quotation marks and citation omitted). Because we find no error with allowing the State's expert to testify in the State's case-in-chief, we do not reach the question of whether the alleged error was plain or fundamental.

## A.    The Testimony of the State's Expert Was Relevant to Proving Deliberate Intent

**{11}** Defendant argues that the testimony from the State's expert was not relevant until Defendant chose to claim he was incapable of forming deliberate intent and that allowing such testimony was error because "[i]rrelevant evidence is not admissible" under Rule 11-402 NMRA. We disagree and conclude that the testimony was relevant to the State's case-in-chief.

**{12}** "Evidence is relevant if (A) it has the tendency to make a fact more or less probable" and "(B) the fact is of consequence in determining the action." Rule 11-401 NMRA. The State charged Defendant with willful and deliberate first-degree murder, which required the State to prove that Defendant acted with deliberate intent. *See* § 30-2-1(A)(1); UJI 14-201 NMRA ("[T]he state must prove to your satisfaction beyond a reasonable doubt . . . [t]he killing was with the deliberate intention to take away the life of [the victim.]"). Defendant's ability to form deliberate intent—and, necessarily, his capacity to do so—was squarely within the State's burden from the outset of trial. *See* UJI 14-201. Additionally, Defendant's confession, which was played for the jury during the State's case-in-chief, included statements—like Defendant's assertion that his wife had turned into a demon—which could cause the jury to question whether Defendant was capable of forming deliberate intent.

**{13}** The State's expert testified that Defendant made statements during his encounter with the police that were consistent with a person capable of deliberating. In his opinion, the body cam footage indicated Defendant was oriented to space and time, had knowledge of consequences, and was able to make plans. He also relied on psychological literature to note that hallucinations and other PTSD symptoms do not preclude the ability to form intent. This testimony was relevant to the State meeting its burden of proof that Defendant acted with deliberate intent. Accordingly, there was no error in permitting the State's expert to testify in the State's case-in-chief.

**{14}** Even if we were persuaded that the State's expert's testimony was not relevant until Defendant raised the issue of inability to form deliberate intent, the testimony would be premature rather than irrelevant. Our courts have distinguished between prematurely admitted evidence and evidence that is entirely irrelevant. *See State v. Foster*, 1998-NMCA-163, ¶ 18, 126 N.M. 177, 967 P.2d 852. Where an issue is unpreserved and

"there is no question that the evidence would have been admissible later in the trial . . . we will not reverse simply because the evidence was admitted prematurely." *Id.* Thus even if the testimony was irrelevant to the State's case-in-chief, it would have become relevant and thereby admissible after Defendant claimed he was unable to form deliberate intent.

## B.    Courts Have Discretion to Vary the Order of Trial and Order of Proof

**{15}**    Defendant also argues that the district court erred because New Mexico's Rules of Criminal Procedure prohibit the State from offering anticipatory rebuttal evidence. His argument hinges on the expert testimony being irrelevant to the State's case-in-chief, and thus only proper on rebuttal. Although we have already rejected Defendant's characterization of the testimony as irrelevant, we nevertheless address Defendant's argument and conclude that there was no error here.

**{16}**    Defendant offers a comparison of our civil and criminal procedural rules in an attempt to show that trial order is mandatory for criminal courts. He argues that our Rules of Civil Procedure provide explicitly for the court to vary the order of civil trials in Rule 1-040(C)(3) NMRA, while its criminal counterpart, Rule 5-607 NMRA, contains no such carveout. *Compare* Rule 1-040(C)(3) (civil rule providing "[t]he order of proceeding in trials, *unless otherwise directed by the court*, *shall* be as follows" (emphasis added)), *with* Rule 5-607 (criminal rule providing "[t]he order of trial *shall* be as follows" (emphasis added)). This argument ignores Paragraph J of Rule 5-607, which authorizes judicial discretion in the submission of evidence. Rule 5-607(J) ("[A]t any time before submission of the case to the jury, the court may, for good cause shown, permit the state or defense to submit additional evidence."). It also ignores over a century of precedent in which our courts have repeatedly affirmed judicial discretion over the order of trial and order of proof in criminal proceedings.

**{17}**    Since our territorial days, New Mexico courts have exercised flexibility in the order of trial in criminal and civil cases, because "in almost every case circumstances arise which disturb the strict enforcement of the procedural rule . . . . It follows that some one [*sic*] must have the power to vary the order of proof to meet the exigencies of any given trial . . . and that power is vested in the trial judge." *State v. Carabajal*, 1920-NMSC-086, ¶ 13, 26 N.M. 384, 193 P. 406 (citing to territorial cases holding the same). Our courts have continued to hold that "the order of trial in a criminal case and of proof therein is largely within the discretion of the court," *State v. Cummings*, 1957-NMSC-105, ¶ 8, 63 N.M. 337, 319 P.2d 946 (internal quotation marks and citation omitted), even after adopting new rules of criminal procedure in the 1970s. *See State v. Mead*, 1983-NMCA-055, ¶ 8, 100 N.M. 27, 665 P.2d 289 ("The trial court has complete discretion to determine the order of proof."), *rev'd sub nom. on other grounds by State v. Segotta*, 1983-NMSC-092, ¶¶ 1, 10, 100 N.M. 498, 672 P.2d 1129. We could not find, nor does Defendant cite, any New Mexico cases prohibiting judicial discretion in the order of criminal trials. We note that while there are scenarios in which varying the order of trial could prejudice a defendant and constitute error, that scenario is not before us.

**{18}** Here, it was the State's burden to show deliberate intent. UJI 14-201. To meet this burden, the State had an expert witness testify about whether the symptoms described by Defendant during the police lapel footage and subsequent interviews would preclude a person from forming deliberate intent. The testimony was thus relevant to the State's case-in-chief, not rebuttal evidence, and the district court did not violate our rules of evidence or criminal procedure by permitting the testimony prior to Defendant's case-in-chief.

## III.    CONCLUSION

**{19}**    For the foregoing reasons, we affirm Defendant's conviction.

**{20}    IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**