This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      **No. 29,701**

**JACOB BROWN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Pasternoster, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**FRY, Judge.**

{1}     Defendant Jacob Brown appeals his convictions for two counts of death by vehicle (reckless driving). Defendant raises five issues on appeal. He argues that the

trial court erred in denying his motion for a change of venue, in admitting statements he made at the scene of the accident prior to being issued a *Miranda* warning, and in allowing one of the State's witnesses to offer opinion testimony on the effects of the drugs found in his system and the correlation between the effects of those drugs and his behavior. Defendant also argues that his constitutional right to confrontation was violated by admission of his drug test results and that his trial counsel was ineffective. We address each of these contentions below and, for the reasons that follow, we affirm.

**{2}** Because this is a memorandum opinion and because the parties are familiar with the procedural history and facts of this case, we reserve further discussion of pertinent facts for our analysis.

**Change of Venue**

**{3}** Defendant argues that the district court abused its discretion in denying his motion for a change of venue. Defendant's trial was originally set for July 7, 2008, in Taos County. However, of the 300 people called for jury service, only fifty-seven people appeared for voir dire. During the initial voir dire, thirty-eight of the fifty-seven were struck for cause due to their exposure to pretrial publicity, leaving only nineteen remaining members of the jury venire. The district court therefore ordered a continuance, and the trial was rescheduled for November 3, 2008.

{4} Defendant moved for a change of venue before the start of the November trial, although it is unclear from the record before us how the issue was raised. The district court issued a letter decision stating that Defendant's motion was denied. While acknowledging that the earlier trial setting was vacated due to the large percentage of venire members exposed to pretrial publicity, the district court concluded that the problem was in part due to the relatively low turnout of jurors responding to the summons and would be remedied by "doubl[ing] the call" for jurors. Eighty-nine prospective jurors subsequently appeared for the second venire out of the presumably six hundred called for jury service. Defendant's jury was impaneled from this second venire.

{5} Despite the higher turnout for the second trial setting, Defendant now argues that because sixty-six percent of the original venire was struck for cause from the original venire, the district court abused its discretion in denying the motion for a change of venue. We disagree.

{6} We review a district court's venue determination for abuse of discretion. *State v. Vasquez*, 2010-NMCA-041, ¶ 35, 148 N.M. 202, 232 P.3d 438. A district court's "decision to grant a change of venue may be based on either a presumption that prospective jurors are prejudiced or on evidence of actual juror prejudice." *Id.* ¶ 36. While Defendant argues on appeal that there was both presumed and actual prejudice,

our Supreme Court has previously determined that when a party has not demonstrated presumed prejudice and the district court proceeds to voir dire, the scope of our review is limited to the evidence of actual prejudice. *State v. Barrera*, 2001-NMSC-014, ¶ 16, 130 N.M. 227, 22 P.3d 1177. We therefore proceed to review Defendant's argument for actual prejudice. *See Vasquez*, 2010-NMCA-041, ¶ 37.

{7}    We understand Defendant's argument to be that the high percentage of jurors struck from the original venire due to prejudicial exposure to pretrial publicity is indicative of the existence of actual prejudice in the second venire. Defendant's argument fails, however, because he makes no argument that any of the jurors actually impaneled from the second venire exhibited actual prejudice. *See id.* ¶ 38; *Barrera*, 2001-NMSC-014, ¶ 18 (holding that there was no evidence of actual prejudice where the "individuals actually selected for the jury stated that they were either unfamiliar with the case or that they could decide the case based upon the evidence presented at trial"); *State v. Chamberlain*, 1991-NMSC-094, ¶ 6, 112 N.M. 723, 819 P.2d 673 ("The court determined through voir dire that the jurors, although they may have heard of the case, were not incapable of impartiality. More is not required."). Defendant does not point us to any evidence that the impaneled jurors expressed an inability to impartially decide the case. Accordingly, we conclude that the district court did not abuse its discretion in denying Defendant's motion for change of venue.

## *Miranda* **Violation**

**{8}**     Defendant argues that the district court erred in not suppressing statements Defendant made to a police officer at the scene of the accident because he was not given a *Miranda* warning prior to being questioned. *See State v. Snell*, 2007-NMCA-113, ¶ 9, 142 N.M. 452, 166 P.3d 1106 (reiterating the rule that a person subjected to custodial interrogation must be given a *Miranda* warning and that any unwarned statements cannot be used against the person as substantive evidence at trial). "Whether a person is subject to custodial interrogation and entitled to the constitutional protections of *Miranda* is a mixed question of law and fact." *State v. Javier M.*, 2001-NMSC-030, ¶ 17, 131 N.M. 1, 33 P.3d 1. "[F]actual determinations . . . are subject to a substantial evidence standard of review and application of law to the facts . . . is subject to de novo review." *State v. Munoz*, 1998-NMSC-048, ¶ 39, 126 N.M. 535, 972 P.2d 847 (internal quotation marks and citation omitted).

**{9}**     "Whether an interrogation is custodial depends on all of the surrounding circumstances, but the ultimate inquiry is whether there was a restraint on freedom of movement of the degree associated with a formal arrest." *Snell*, 2007-NMCA-113, ¶ 10 (internal quotation marks and citation omitted). "The test is objective[.]" *Id*. (internal quotation marks and citation omitted). Thus, the question is "whether a reasonable person in the defendant's position would believe that his or her freedom

5

of movement had been restrained to the degree associated with a formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 21, 142 N.M. 737, 169 P.3d 1184.

{10}    Both Defendant and the officer testified that the officer approached Defendant and asked if he was the driver of the vehicle. Defendant answered that he was and was then asked by the officer if he would accompany the officer to the patrol unit. Defendant testified that he was asked to sit in the patrol unit and that once he was placed in the vehicle, with the officer blocking the open door, the officer then asked him what happened. The officer, on the other hand, testified that Defendant was not in the patrol unit when he asked Defendant about the details of the accident. The officer testified that after Defendant related his side of events, the officer told Defendant he was not under arrest but was being detained for investigative purposes and only then did he ask Defendant to sit in the patrol unit. Ultimately, the district court found the officer's account of events more credible and concluded that this brief questioning was not a custodial interrogation.

{11}    The district court properly concluded that Defendant's *Miranda* rights were not violated by the questioning. First, Defendant testified that he voluntarily accompanied the officer to his patrol unit. Second, there is substantial evidence supporting the district court's finding that Defendant was not in the patrol unit when he was questioned, despite Defendant's testimony to the contrary. *See Las Cruces Prof'l Fire*

6

*Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached."). As noted above, the officer testified that Defendant was not placed in the patrol unit until *after* he was asked about the accident and after he was told that he was not under arrest. Third, Defendant was not handcuffed and was permitted to retain his cell phone, which he used to contact his parents. Finally, even assuming Defendant was in the patrol unit during the officer's questioning, that fact alone does not establish a *Miranda* violation. *See Munoz*, 1998-NMSC-048, ¶¶ 39-43 (holding that there was no custodial interrogation where the defendant was interrogated in an FBI agent's vehicle for one hour and forty minutes); *see also Snell*, 2007-NMCA-113, ¶¶ 14, 17 (concluding that where the officers threatened the defendant with arrest before conducting interrogation inside a police vehicle constituted a custodial interrogation and further stating that "the bare fact that a defendant is questioned while in a police vehicle is . . . insufficient to constitute a custodial interrogation"). Given these facts, we affirm the district court's conclusion that Defendant was not subject to a custodial interrogation and, thus, not entitled to a *Miranda* warning prior to the officer's questioning.

**Confrontation Clause**

{12} Defendant argues that his confrontation clause rights were violated by the admission of forensic toxicology reports without corresponding testimony by the analyst who performed the tests or a prior opportunity for Defendant to cross-examine the analyst. The forensic reports at issue indicated that Defendant had no alcohol in his system at the time his blood was drawn but later drug testing of the sample revealed the presence of cyclobenzaprine and marijuana. Defendant did not object to the admission of either of these reports. Because Defendant did not preserve this issue, we review for fundamental error. *State v. Pacheco*, 2007-NMSC-009, ¶ 8, 141 N.M. 340, 155 P.3d 745.

{13} "The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. Second, if it is determined that an error occurred, we then consider whether the error was fundamental. *Id.* "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to [the defendant's] defense[.]" *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). We will only reverse a conviction if "the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant,

8

substantial justice has not been served." *Campos v. Bravo*, 2007-NMSC-021, ¶ 18, 141 N.M. 801, 161 P.3d 846 (internal quotation marks omitted). "Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id.*

{14} Defendant's confrontation clause rights were clearly violated by the admission of the exhibits. Exhibit 36 includes a "Certificate of Analyst" stating that the non-testifying analyst complied with the proper procedures for administering the tests and certified that no alcohol was found in Defendant's system. It further stated that drug results were to follow. Exhibit 32 contains the results of the drug test. At trial, Dr. Rong-Jen Hwang, the bureau chief of the toxicology bureau of the New Mexico Department of Health, was called to testify regarding the analyst's analyses and conclusions. Dr. Hwang also testified that he did not independently perform a test of Defendant's blood sample before testifying. Thus, admission of the forensic reports was in violation of Defendant's confrontation clause rights. *See State v. Moncayo*, 2012-NMCA-066, ¶ 8, 284 P.3d 423 (stating that the "introduction of testimony through a substitute or surrogate witness attesting to the original analyst's report violated a defendant's right to confrontation"*); see also State v. Huettl*, 2013-NMCA-038, ¶ 37, 305 P.3d 956 (stating that under the confrontation clause "[w]hat has emerged as clearly impermissible is an expert's testimony which is based solely upon

9

a non-testifying analyst's analysis and conclusions"), *cert. granted*, 2013-NMCERT-003, 300 P.3d 1182.

{15}     However, we cannot conclude that the district court's admission of the forensic reports amounted to fundamental error. Defendant was charged in the alternative with death by vehicle (driving while under the influence of any drug) or death by vehicle (reckless driving). Under the DWI charge, the jury was instructed that in order to find Defendant guilty it had to find, among other things, that he "operated a motor vehicle while under the influence of drugs." Another jury instruction explained that "[a] person is under the influence of a drug when as a result of using a drug the person is incapable of safely driving a vehicle." The forensic reports were introduced by the State to prove that Defendant was under the influence of drugs at the time of the accident. The jury acquitted Defendant of the charge of death by vehicle (driving while under the influence of any drug).

{16}     While it cannot be known the extent to which admission of the reports affected the jury's deliberations with regard to the recklessness of Defendant's driving, there was ample evidence supporting Defendant's convictions for the alternative charge of death by vehicle (reckless driving) regardless of the drugs in his system. *McCarson v. Foreman*, 1984-NMSC-129, ¶ 16, 102 N.M. 151, 692 P.2d 537 ("Drug use during or close to the time the [vehicle] was driven would be relevant to a charge of reckless

driving."); *see State v. Rodriguez*, 1970-NMSC-073, ¶ 10, 81 N.M. 503, 469 P.2d 148 (stating that "[i]f there is substantial evidence . . . to support the verdict of the jury, we will not resort to fundamental error"). The jury was instructed that reckless driving entailed driving "with [a] willful disregard of the safety of others and at a speed or in a manner that endangered or was likely to endanger any person." Witnesses testified that Defendant was speeding prior to the accident and repeatedly drove into oncoming lanes of traffic, forcing at least one other vehicle off the road and bumping another. Defendant also stated at the scene of the accident that he was on his way home following his night shift, that he was tired, and that he did not think his anti-lock brakes were working. Therefore, Defendant's convictions for death by vehicle (reckless driving) neither shock the conscience nor convince us that there has been a miscarriage of justice due to the admission of the forensic reports without corresponding testimony by the certifying analyst.

**Luthi Testimony**

{17} Defendant challenges the testimony of forensic toxicologist Ruth Luthi. We understand Defendant's argument to be that Luthi was not qualified to offer an opinion on the effects of the drugs found in Defendant's system and that her testimony was not helpful to the trier of fact because she could offer no more than generalized statements regarding the effects of the drugs on an individual's reaction times.

11

Furthermore, Luthi, like Dr. Hwang, based her opinions on the analyses and conclusions of the non-testifying analyst's forensic reports. While we assume without deciding that the district court erred in admitting Luthi's testimony, we nonetheless conclude the admission of Luthi's testimony was harmless error.

{18} Defendant is challenging an evidentiary error. A non-constitutional error is harmless if there is no reasonable probability that the error contributed to the defendant's conviction. *State v. Tollardo*, 2012-NMSC-008, ¶ 32, 275 P.3d 110.

{19} The purpose of Luthi's testimony was to establish that the amount of drugs in Defendant's system impaired Defendant's driving and caused the accident. Luthi testified that both cyclobenzaprine and marijuana act as central nervous system depressants. Luthi also testified that the pyschoactive effects of marijuana can cause an individual to experience problems with concentration and the ability to accurately calculate time and distance. Luthi's ultimate conclusion was that the effect of these drugs were "contributory" to the accident such that "in all likelihood part of the reason it happened was that [Defendant] was under the influence of these drugs."

{20} As stated above, however, the jury acquitted Defendant of death by vehicle (driving while under the influence of any drug). And, as discussed above, there was a disproportionate amount of other evidence supporting the jury's finding that Defendant was guilty of death by vehicle (reckless driving). Thus, we cannot say that

12

there is any reasonable probability that the district court's assumed error in admitting Luthi's testimony affected Defendant's convictions for death by vehicle (reckless driving). *See id.*

**Ineffective Assistance of Counsel**

{21}    We review a claim for ineffective assistance of counsel de novo. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. In order to establish a prima facie claim for ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) he suffered prejudice in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Patterson v. LeMaster*, 2001-NMSC-013, ¶¶ 19, 28, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted).

{22}    We conclude that Defendant has failed to establish a prima facie claim of ineffective assistance of counsel. Defendant argues that his trial counsel's errors prejudiced him because the errors led to a violation of his rights to a fair and impartial jury, admission of un-Mirandized statements, and admission of evidence that prejudiced the jury. However, the prejudice claimed by Defendant involves issues resolved against Defendant in this appeal. Thus, even assuming that these issues are the result of defective representation, Defendant has not affirmatively proved that but

for the errors, the result of the proceeding would have been different. *See State v. Quiñones*, 2011-NMCA-018, ¶ 30, 149 N.M. 294, 248 P.3d 336 ("A defendant must . . . affirmatively prove prejudice.").

**CONCLUSION**

{23}    For the foregoing reasons, we affirm Defendant's convictions.

{24}    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**