# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-024**

**Filing Date: March 3, 2021**

**No. A-1-CA-36921**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANK VIGIL, JR.,**
**a/k/a FRANKIE VIGIL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J C Robinson, District Judge**

Certiorari Denied, April 22, 2021, No. S-1-SC-38748. Released for Publication July 20, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}**     Defendant Frankie Vigil appeals his convictions for (1) use of a telephone "to terrify, intimidate, threaten, harass, annoy or offend," in violation of NMSA 1978, Section 30-20-12(A) (1967); and (2) "[b]ribery or intimidation of a witness[,]" in violation of NMSA 1978, Section 30-24-3(A)(2) (1997). Defendant challenges his convictions on three grounds: (1) the evidence is insufficient to identify him as the perpetrator of either

offense; (2) his conviction of both offenses, allegedly for the same conduct, violates the Double Jeopardy Clause of the United States Constitution; and (3) his due process rights were violated by a delayed appeal. Unpersuaded, we affirm.

**BACKGROUND**

**{2}**     The following evidence was presented during Defendant's trial pursuant to a criminal information filed on April 19, 2017, charging Defendant with "[u]se of a telephone to terrify, intimidate, threaten, harass, annoy or offend," in violation of Section 30-20-12(A); and "[b]ribery or intimidation of a witness[,]" in violation of Section 30-24-3(A)(2). Defendant and Victim are married, and have two children together. They married in 2009, and have been separated since 2010.

**{3}**     Victim testified that Defendant broke the windshield of her car on December 1, 2016. Victim reported the incident to the police. The police came to Victim's house to investigate the broken windshield. Right after the police left, Victim received two voicemails.

**{4}**     In the first voicemail, the caller tells Victim, "I've been at your house, and I'm still here," calls Victim a "rat bitch[,]" and threatens to kill her for ratting him out. Then, in the second voicemail, the caller tells Victim, "I'll get to you before they get to me . . .  because you are done you . . . nasty ass[.]" At trial, Victim identified Defendant as the caller. Victim testified that she knew the caller was Defendant because she recognized his voice; she recognized Defendant's cell phone number on the voicemails; the caller said he was directly outside her house; and the threats were made the same day Defendant broke her windshield, just after the police left her house. Victim also testified that Defendant was one of the few people who knew where she lived.

**{5}**     Defendant was prosecuted in the Silver City Magistrate Court for domestic violence related to breaking Victim's windshield. That case was set for trial on January 31, 2017, and Victim was subpoenaed as a witness. The day before Defendant's trial, on January 30, 2017, Victim received a telephone call from a blocked number. Victim stated she knew the caller was Defendant because she recognized his voice, and because she had been subpoenaed to testify at his trial the next day. The caller told Victim that if she showed up to court the next day, he was going to hurt her. The caller also told Victim that she knew he would beat the charge anyway, even if she testified against him.

**{6}**     Despite the phone call, Victim appeared at magistrate court to testify at Defendant's trial on January 31, 2017. Victim stated she was scared to testify against Defendant, but the subpoena said she could be prosecuted if she did not show up, so she went to court despite being afraid. After arriving at magistrate court, Victim told Sergeant Arthur Rascon, of the Silver City Police Department, about the call she received on January 30, 2017, and about the voicemails she received on December 1, 2016. Victim played the voicemails for Sergeant Rascon, who recorded them on his

body cam. These voicemails were played at trial over Defendant's objection as to lack of authenticity and foundation.

**{7}** At the close of the State's case, a jury convicted Defendant of use of a telephone to terrify, intimidate, threaten, harass, annoy or offend[,]" pursuant to Section 30-20-12(A), occurring on or about December 1, 2016, through January 30, 2017, and "[b]ribery or intimidation of a witness[,]" pursuant to Section 30-24-3(A)(2), occurring on or about December 1, 2016, through January 30, 2017. This appeal followed.

## DISCUSSION

### I. The Evidence Identifying Defendant as the Caller Is Sufficient to Support Defendant's Convictions

**{8}** Defendant challenges each of his convictions, claiming that the State failed to prove beyond a reasonable doubt that Defendant was the person who telephoned Victim on December 1, 2016, leaving two voicemail messages on her cell phone, and who called and spoke to Victim on January 30, 2017.[1] Because admissibility of the telephone calls is not contested on appeal, we review the sufficiency of the evidence to support the jury's decision.

**{9}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256 (alterations, internal quotation marks, and citation omitted). We "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* (internal quotation marks and citation omitted). Next, we determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[W]e do not weigh the evidence or substitute our judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted).

**{10}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d

---

[1]Defendant objected to the admission of the telephone recording on the grounds of lack of foundation and authentication. *See* Rule 11-901(A) NMRA (to authenticate a document the proponent of the evidence shall "produce evidence sufficient to support a finding that the item is what the proponent claims it is"). However, Defendant does not challenge on appeal the district court's decision allowing the recording to be played for the jury, nor does he claim on appeal that Victim's testimony was improperly admitted into evidence. Therefore, we limit our analysis accordingly.

1076 (alteration, internal quotation marks, and citation omitted). The instruction given the jury on the elements of use of a telephone to "terrify, intimidate, threaten, harass, annoy or offend" required the State to prove beyond a reasonable doubt:

1.  [D]efendant telephoned [Victim] to threaten her with physical harm;

2.  [D]efendant intended to terrify, intimidate, threaten, harass, annoy or offend [Victim]; [and]

3.  This happened in New Mexico on or about December 1, 2016[,]through January 30, 2017.

**{11}** The jury was instructed that to convict Defendant of "[b]ribery or intimidation of a witness" the State had to prove beyond a reasonable doubt:

1.  [Victim] was a witness in a judicial proceeding;

2.  [D]efendant knowingly intimidated or threatened [Victim] for the purpose of causing [Victim] to abstain from testifying in the judicial proceeding; [and]

3.  This happened in New Mexico on or about December 1, 2016[,] through January 30, 2017.

**{12}** The primary evidence at trial identifying Defendant as the person who called Victim on December 1, 2016, and January 30, 2017, was the testimony of Victim. Victim testified that she was confident that the caller on both December 1, 2016, and January 30, 2017, who left the voicemail messages and who she spoke to on a relative's phone, was Defendant. She reported being familiar with Defendant's voice from the many years they had been married. As to the December 1, 2016, voicemails, Victim testified that, in addition to recognizing Defendant's voice, she recognized the telephone number as Defendant's cell phone number.

**{13}** Victim also testified to the circumstances surrounding the December 1, 2016, voicemails. She testified that Defendant had appeared at her home on the afternoon of December 1, 2016. An altercation occurred, and Defendant broke the windshield on her car. Victim testified that she called the police, who came to her house that same afternoon to investigate the broken windshield, and once police left she received a call from a number she recognized as Defendant's cell phone number. When she did not answer, Defendant left a voicemail, and then called back and left a second voicemail. The voicemails stated that the caller was near Victim's house, and accused Victim of "ratting [him] out." Victim's description of the content of the voicemails was confirmed by the bodycam recording made by Sergeant Rascon from Victim's cell phone. Although the recording was not completely clear, the tone of the call and enough of the content to confirm Victim's testimony was audible. The content of the call was consistent with Victim's testimony that Defendant had been at her home when he broke her windshield, and was likely nearby watching the police arrive and then leave.

**{14}** Victim's familiarity with Defendant's voice far exceeded the familiarity from just a few previous phone calls that we have found sufficient to identify a voice. *See State v. Padilla*, 1982-NMCA-100, ¶ 5, 98 N.M. 349, 648 P.2d 807 (stating a "witness need not be an expert in voice identification to testify as to the identity of the defendant[,]" the witness needs only "some basis for comparison of the accused's voice with the voice which he or she identifies as the accused's" (internal quotation marks and citation omitted)); *see also State v. Romero*, 2019-NMSC-007, ¶ 43, 435 P.3d 1231 (citing with approval federal cases finding identification of the caller sufficient where the witness heard a caller's voice only two or three times before making an identification). Victim corroborated her voice identification of Defendant, both identifying Defendant's cell phone number, and describing the content of the calls as consistent with events involving Defendant, which occurred just before Defendant's calls. *See Romero*, 2019-NMSC-007, ¶ 43 (relying on voice identification together with circumstantial evidence of the defendant's identity). We therefore hold that the evidence was sufficient to identify Defendant as the person who left the December 1, 2016, voicemails on Victim's cell phone.

**{15}** With regard to the January 30, 2017, phone call, Victim again testified that she was familiar with Defendant's voice and recognized the voice on the phone as Defendant's even though he was calling from a blocked number. Victim testified that the caller threatened to harm her if she testified the next day. Victim was not aware of anyone other than Defendant who knew she had been subpoenaed to testify the next day, or who would have an interest in preventing her from testifying. *See State v. Roybal*, 1988-NMCA-040, ¶ 13, 107 N.M. 309, 756 P.2d 1204 ("The caller's message itself during the telephone conversation may provide evidence of the caller's identity."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The identification of Defendant's voice by a witness who was familiar with that voice, and the content of the call; which indicated that the caller was aware that Victim was scheduled to testify the next day, and that the caller had an interest in her not testifying, together are sufficient to support the jury's conclusion that Defendant was the caller. We therefore hold that the evidence was sufficient to identify Defendant as the person who made all three telephone calls at issue.

## II. Because Defendant's Conduct Was Not Unitary, There Was No Double Jeopardy Violation

**{16}** Defendant contends that his separate convictions for use of a telephone to "terrify, intimidate, threaten, harass, annoy or offend," contrary to Section 30-20-12(A), and "[b]ribery or intimidation of a witness," contrary to Section 30-24-3(A)(2), violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution because they result in multiple punishments for the same conduct. We disagree.

**{17}** "A double jeopardy challenge presents a question of constitutional law, which we review de novo." *State v. Torres*, 2018-NMSC-013, ¶ 17, 413 P.3d 467. The double jeopardy clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, "protects against multiple

punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. Defendant does not argue that the New Mexico Constitution affords greater rights than the Fifth Amendment, so we review Defendant's claim only pursuant to the federal right. *See State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (reviewing double jeopardy claims only pursuant to the Fifth Amendment when the defendant does not argue that the New Mexico Constitution affords greater protections than the United States Constitution). There are two types of multiple punishment cases: (1) a unit-of-prosecution claim, where an individual is convicted for multiple violations under the same statute for a single course of conduct; and (2) a double-description claim, where an individual is convicted for violating different statutes for a single course of conduct. *Id.*

**{18}** Defendant claims that he engaged in a single course of conduct, beginning with his two December 1, 2016 voicemails, and continuing with his January 30, 2017 telephone call, and that his conviction under both Section 30-20-12(A), and Section 30-24-3(A)(2) for this single course of conduct violates his Fifth Amendment protection against double jeopardy. This is therefore a double-description case. Double-description claims are subject to a two-part analysis. *Swafford*, 1991-NMSC-043, ¶ 25. We first determine whether the conduct is "unitary"; conduct is "unitary" if the same conduct violates both statutes. *Id.* Only if the conduct is unitary do we then proceed to the second part of the test. *Sena*, 2020-NMSC-011, ¶ 45. The second part focuses on "whether the [L]egislature intended to create separately punishable offenses." *Id.* (internal quotation marks and citation omitted). "[O]nly when (1) the conduct is unitary and (2) it is determined that the Legislature did not intend multiple punishments" do we hold that double jeopardy protects against multiple punishments. *Id.*

**{19}** During the pendency of this appeal, our Supreme Court clarified the analysis applied to determine whether conduct is unitary. *See id.* ¶ 42. At issue in *Sena* was the proper application of the *Foster* presumption. *Sena*, 2020-NMSC-011 In *State v. Foster*, our Supreme Court held that, in determining whether the conduct prohibited by two statutes is unitary, we must first examine how the jury was instructed on each offense to determine whether the jury could have relied on the same conduct to convict of both offenses. 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. Our Supreme Court held that, in performing this analysis, "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." *Id.* The *Foster* presumption, therefore, requires that we begin our analysis of whether Defendant's conduct was unitary by examining the jury instructions, and where the jury is offered alternative bases for conviction, we must presume that the jury relied on the alternative that leads to a double jeopardy violation. *See Sena*, 2020-NMSC-011, ¶¶ 54-55.

**{20}** The jury instructions for use of a telephone to terrify, intimidate, threaten, harass, annoy or offend given in this case required the State to prove, in relevant part, that: (1)

"[Defendant] telephoned [Victim] to threaten her with physical harm"; (2) "[Defendant] intended to terrify, *intimidate, threaten,* harass, annoy or offend [Victim]"; and (3) "This happened . . . on or about December 1, 2016 through January 30, 2017." (Emphasis added.) The jury instructions for bribery or intimidation of a witness required the State to prove, in relevant part, that: (1) "[D]efendant knowingly *intimidated or threatened* [Victim] for the purpose of causing [Victim] to abstain from testifying in the judicial proceeding"; and (2) "This happened . . . on or about December 1, 2016 through January 30, 2017." (Emphasis added.) The *Foster* presumption requires us to presume that the jury convicted Defendant for use of a telephone to threaten Victim based on finding that Defendant intended to "intimidate or threaten" Victim because intimidating or threatening a victim are the bases for conviction which the two offenses have in common, and are therefore most likely to result in a double jeopardy violation. *See Sena*, 2020-NMSC-011, ¶ 54 (applying the *Foster* presumption by assuming the jury relied on the alternative common to the offenses).

**{21}** The next step in determining whether a defendant's conduct was unitary is to evaluate whether the jury relied on the same conduct in convicting a defendant of each crime. Our Supreme Court clarified in *Sena* that "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting [the d]efendant of each crime[.]" *Sena*, 2020-NMSC-011, ¶ 54. Rather, assuming under *Foster* that the same alternative was relied on by the jury (here the alternative of intent to threaten or intimidate), we then must determine whether the jury reasonably could have based each of a defendant's convictions on separate conduct. *See Sena*, 2020-NMSC-011, ¶ 54. If there were two events separated by time or space, or events separated by other indicia of distinctness, the *Foster* presumption is rebutted. Evidence that one crime was completed before the other occurred conclusively rebuts the *Foster* presumption and establishes that the conduct on which the convictions were based is not unitary. *See Sena*, 2020-NMSC-011, ¶¶ 54-55 (holding that the *Foster* presumption was rebutted when the evidence supported that the defendant committed three separate and distinct crimes, each completed before another began, even though the crimes occurred close in time and location); *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (holding that when considering whether conduct is unitary, "we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed").

**{22}** In this case, the jury reasonably could have found an independent factual basis for each offense. The threatening phone calls that formed the basis of the convictions occurred almost two months apart. *See Swafford*, 1991-NMSC-043, ¶ 28 (holding that "[i]f two events are sufficiently separated by . . . time . . . then it is a fairly simple task to distinguish the acts"). Defendant's conduct in using a telephone to leave two voicemails on December 1, 2016, threatening to harm Victim was alone sufficient to convict Defendant of use of a telephone to intimidate or threaten Victim, contrary to Section 30-20-12(A). His conduct on January 30, 2017, in phoning Victim, a witness in a judicial proceeding, to intimidate or threaten her for the purpose of causing her to abstain from testifying, is alone sufficient to convict Defendant of bribery or intimidation of a witness, contrary to Section 30-24-3(A)(2).

**{23}** Having concluded that Defendant's conduct in committing the crime of using a telephone to intimidate or threaten, and his conduct in intimidating or threatening Victim for the purpose of causing her to abstain from testifying in a judicial proceeding was not unitary, there was no double jeopardy violation. *See Sena*, 2020-NMSC-011, ¶ 57 (holding that where a defendant's conduct in committing two crimes is not unitary, "there [is] no double jeopardy violation.").

### III. Defendant's Due Process Rights Were Not Violated Based on Appellate Delay

**{24}** Defendant next argues, relying on *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that his due process rights were violated by his delayed appeal. We disagree.

**{25}** "[D]ue process protects a criminal defendant against inordinate delay in direct appeal proceedings." *State v. Garcia*, 2019-NMCA-056, ¶ 40, 450 P.3d 418. Not every delay, however, violates due process. *Id.* ¶ 41. In the context of a delayed appeal, due process rights are evaluated based on notions of "fairness and prejudice." *Id.* ¶ 44.

**{26}** Evaluating whether an appellate delay violates due process requires a two-step process. *See id.* ¶ 46. First, we "evaluate the impact of the appeal period on the appellant." (internal quotation marks and citation omitted). Specifically, we evaluate whether the impact of the delayed appeal has been prejudicial. *Id.* Only if the impact has been prejudicial do we then proceed to the second step: "whether the relationship between (a) the nature and severity of the prejudice and (b) the government's alleged responsibility for it by delaying the appeal, warrants dismissal of the information or indictment under the Fifth Amendment." *Id.* (internal quotation marks and citation omitted).

**{27}** In determining the prejudicial impact of the delay on appellant, we focus on two types of prejudice: "(1) prejudice to a defendant's ability to assert his or her arguments on appeal, and (2) prejudice to a defendant's right to defend him or herself in the event of retrial or resentencing." *Id.* Defendant concedes that neither of these types of prejudice applies. Defendant solely argues that if successful in his assertion of his arguments on appeal, he will have unnecessarily languished in prison because of the appellate delay. Defendant, however, fails to explain how this impacts his ability to assert his arguments on appeal, or at retrial or resentencing, the type of prejudicial impact cognizable under the Fifth Amendment. In any event, Defendant's arguments on appeal were not successful, and thus, Defendant has failed to point to any possible prejudice. Therefore, we hold that his due process rights were not violated.

**CONCLUSION**

**{28}** We affirm.

**{29} IT IS SO ORDERED.**

JANE B. YOHALEM, Judge

WE CONCUR:

JACQUELINE R. MEDINA, Judge

BRIANA H. ZAMORA, Judge