This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40807**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARL GAGE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio Chavez, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant Carl Gage was convicted of sixteen offenses arising from six burglaries and one attempted burglary he committed in Taos, New Mexico between March and December 2018: six counts of nonresidential burglary (Counts 1 to 6), contrary to NMSA 1978, Section 30-16-3(B) (1971); five counts of larceny (Counts 7 to 11), contrary to NMSA 1978, Section 30-16-1 (2006); three counts of criminal damage to property (Count 12 to 14), contrary to NMSA 1978, Section 30-15-1 (1963); one count of breaking and entering (Count 15), contrary to NMSA 1978, Section 30-14-8 (1981);

and one count of attempted burglary (Count 16), contrary to NMSA 1978, Section 30-28-1 (1963, amended 2024) and Section 30-16-3(B).[1] Defendant appeals, challenging his convictions for breaking and entering, larceny, and criminal damage to property for the same incidents where he was also convicted of nonresidential burglary, alleging that any of these additional convictions together with the burglary conviction violated his right to be free from double jeopardy. Defendant also contends that the district court relied on uncharged and unproven crimes to improperly increase his sentence. Finally, Defendant argues, based on fundamental error because he did not preserve these issues in the district court, that a search warrant for cell site location records was unconstitutionally broad and that the admission of evidence from the cell records requires reversal and remand for a new trial. We conclude that Defendant's conviction for breaking and entering and two of his three convictions for criminal damage to property violate Defendant's right to be free from double jeopardy and must be vacated. We otherwise affirm.

## BACKGROUND

**{2}**     We describe the six burglaries and the attempted burglary in chronological order. During each of these incidents, Defendant covered his head and the lower part of his face with bandanas. Because Defendant's face was covered, authorities initially had difficulty identifying Defendant as the perpetrator despite the extensive security camera footage of each incident.

### First Burglary

**{3}**     The first burglary occurred on March 23, 2018, at Popolo's Games. The State charged Defendant with three counts—Count 1, nonresidential burglary; Count 8, larceny over $500; and Count 12, criminal damage to property.

**{4}**     The State presented the following evidence at trial. In the early morning hours of March 23, a surveillance camera at Popolo's Games captured Defendant approaching the business. Defendant had a pry bar in one hand and a bag in the other. After waiting for a vehicle turning into a nearby street to drive away, Defendant, left the bag on the sidewalk, walked towards the front door of the business and dismantled a light fixture. Defendant then used his pry bar to force the front door open. After forcing the door open, Defendant retrieved his bag and entered the business. Trial testimony established that there was approximately $300 of damage to the door. The manager at Popolo's testified that Defendant did not have permission to enter the business.

**{5}**     Once inside, a second surveillance camera captured Defendant walking to a display case and taking items from the case. The manager at Popolo's testified that the items taken were game devices and games worth approximately $1,090. Defendant

---

[1]For ease of reference, we refer to each count based on the count number that it was assigned in the instructions to the jury.

then walked to the cash register, which contained approximately $250, and removed all the cash.

**Second Burglary**

**{6}** The second burglary occurred on July 23, 2018, at Blake's Lotaburger. Defendant was charged only with Count 2, nonresidential burglary. There is no double jeopardy claim on appeal as to this incident.

**Third Burglary**

**{7}** The third burglary occurred on September 4, 2018, at Koko's Coffee and Deli. The State charged Defendant with Count 3, nonresidential burglary; and Count 7, larceny over $2,500.

**{8}** The State presented the following evidence at trial. On September 4, Defendant approached the back door of Koko's Coffee and Deli. Photos taken by law enforcement at the scene showed that Defendant used a pry bar to force the back door open and enter the business. The owner of Koko's testified that Defendant did not have permission to enter the business.

**{9}** Once inside, Defendant took various items from the business. The owner of Koko's testified that Defendant took two bank bags containing $2,126, and employee tip envelopes containing approximately $200 from a filing cabinet. Defendant also removed $150 cash from each of two cash register drawers and took the bag of money that the business used to make change, which contained $200.

**Fourth Burglary**

**{10}** The fourth burglary occurred on September 28, 2018, at Southwest Wellness. The State charged Defendant with Count 4, nonresidential burglary; Count 10, larceny of $250 or less; and Count 13, criminal damage to property.

**{11}** The State presented the following evidence at trial. In the early hours of September 28, a surveillance camera captured Defendant approaching the front door of Southwest Wellness with a pry bar in one hand and a bag in the other. After casing the building, Defendant used the pry bar to force the door open, damaging the door in the process, and entered the business. The technology director at Southwest Wellness testified that Defendant did not have permission to enter the business.

**{12}** Once inside, Defendant jumped over the front desk, walked towards the back of the store, and tested the doors in the hallways to see if any were unlocked. Defendant tore a security alarm panel off the wall, and broke it. Defendant then returned to the front desk of the store where he forced open a register drawer and attempted to force open a second drawer. Defendant then jumped back over the front desk, walked to a maintenance closet located a few feet away, and forced the door to the closet open. He

then walked back to the front desk, took the second register drawer, which contained $200, and left. The technology director at Southwest Wellness testified that Defendant caused damages worth approximately $800 to the store. Damage to the front door was included in that figure, and so were the costs of replacing the alarm panel and repairing the closet door and cash register.

**Fifth Burglary**

{13}   The fifth burglary occurred on October 1, 2018, at Koko's Coffee and Deli. The State charged Defendant with Count 5, nonresidential burglary; and Count 9, larceny over $500.

{14}   The State presented the following evidence at trial. On October 1, 2018, a newly installed Ring camera at Koko's Coffee and Deli captured Defendant approaching the back door of the business. Defendant had a pry bar in one hand, a bag in the other, and a backpack over his shoulder. Defendant used the pry bar and another tool to force the back door open. Defendant then entered the business. One of the indoor cameras captured Defendant's entry. The owner of Koko's testified that Defendant did not have permission to enter the business.

{15}   Once inside, Defendant walked to front of the business, went to the cash register and looked for cash. Defendant also browsed the food display cases and cabinets located at the front of the store and took various food items. The owner of Koko's testified that Defendant took bags of coffee beans, approximately two dozen burritos, and a platter of shrimp, as well as employee tips. Defendant then returned to a safe containing a deposit bag. Defendant used the pry bar and another tool to force the safe off of the floor, taking it with him. The owner of Koko's testified that the value of everything taken by Defendant was close to $2,000.

**The Attempted Burglary**

{16}   The attempted burglary occurred on November 19, 2018, at Koko's Coffee and Deli, for which Defendant was charged with Count 16, attempt to commit the crime of nonresidential burglary. Defendant does not challenge this conviction on double jeopardy grounds on appeal.

**Sixth Burglary**

{17}   The sixth burglary occurred on December 10, 2018, at Bailey's Chimney. The State charged Defendant with Count 6, nonresidential burglary; Count 11, larceny over $500; Count 14, criminal damage to property over $1,000; and Count 15, breaking and entering.

{18}   The State presented the following evidence at trial. In the early hours of December 10, 2018, a surveillance camera captured Defendant approach the front entrance of Bailey's Chimney and dismantle a light fixture. Defendant had a backpack

over his shoulder with pry bars in it. Defendant cased the building and moved the surveillance camera upward. Defendant eventually returned to the front entrance and used the pry bars to force the front door open, damaging the door in the process. The owner of Bailey's testified Defendant caused approximately $250 in damage to the door. Defendant then entered the business. The owner of Bailey's testified that Defendant did not have permission to enter the business.

**{19}** Once inside, Defendant forced open a petty cash drawer, damaging the drawer, which contained approximately $80. Defendant also forced open two locked filing cabinets, causing $1,200 of damage to the filing cabinets. Defendant took a Chromebook, which was valued at approximately $300. Photos taken at the scene also showed that Defendant took the business's safe, which was worth between $250 and $350. Law enforcement later found the safe behind the business.

**{20}** The facts relevant to Defendant's sentencing and warrant claims will be included in our discussion of those issues.

## DISCUSSION

### I.  Defendant's Double Jeopardy Claims

**{21}** The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects against "multiple punishments for the same offense." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227 (internal quotation marks and citation omitted). Defendant does not argue that the New Mexico Constitution affords him greater rights than the Fifth Amendment, so we review Defendant's claims only pursuant to the federal right. *See id.*

**{22}** Defendant first argues that his five convictions for nonresidential burglary, when combined with a conviction for any one or more of the additional crimes charged for the same incident—breaking and entering, larceny, or criminal damage to property—is based on unitary conduct that was not intended by the Legislature to be punished separately, and that these additional convictions, therefore, violate his right to be free from double jeopardy. We apply a de novo standard of review to double jeopardy claims. *See State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745.

### A.  Double Description Claims and the Two-Part *Swafford* Test

**{23}** Defendant's double jeopardy claims are what is known as double description claims. Double description claims arise when an individual is convicted under different statutes for a single act or course of conduct. *See State v. Vigil*, 2021-NMCA-024, ¶ 17, 489 P.3d 974. Double description claims are subject to the two-part test adopted by our Supreme Court in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223.

**{24}** Under the first part of the test, we review "whether the conduct underlying the offenses is unitary." *Id.* If the conduct is unitary, we then "proceed to the second part of the test," *Vigil*, 2021-NMCA-024, ¶ 18, where we review whether the Legislature intended to punish the offenses separately, *Swafford*, 1991-NMSC-043, ¶ 25. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* ¶ 25.

## B. Unitary Conduct

**{25}** To determine whether a defendant's conduct is unitary, we must determine whether the challenged offenses were separated by "sufficient indicia of distinctness." *Id.* ¶ 26. We rely on the six factors identified in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. *See State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (holding that New Mexico applies the *Herron* factors to determine whether there is distinct conduct in double description cases). The factors considered in *Herron* include: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by [their] conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12. In evaluating these factors, we look to the elements of the offenses, the instructions provided to the jury, and the facts presented at trial. *See id.* ¶ 38. Finally, *Phillips* holds that "[u]nitary conduct is not present when one crime is completed before another is committed." *Id.* (internal quotation marks and citation omitted).

## C. Legislative Intent

**{26}** To discern the intent of the Legislature, we begin with the language of the relevant statutes, looking first to determine whether the statutes expressly authorize multiple punishments. *See State v. Begaye*, 2023-NMSC-015, ¶ 21, 533 P.3d 1057. Where the statutes do not expressly authorize multiple punishments, we continue our analysis. *See id.* ¶ 21. Where the statutes are "vague and unspecific or are written in the alternative," so there is more than one way they can be violated, we apply the modified version of the *Blockburger* test. *Begaye*, 2023-NMSC-015, ¶ 17. Under the modified *Blockburger* test, we "compare the elements of the offense[s], looking at the [s]tate's legal theory of how the statutes were violated." *State v. Porter* 2020-NMSC-020, ¶ 8, 476 P.3d 1201. "To ascertain the state's legal theory, this Court reviews the statutory language, charging documents, and jury instructions used at trial." *Begaye*, 2023-NMSC-015, ¶ 24 (alterations, internal quotation marks, and citation omitted). "If the state's legal theory cannot be ascertained using the charging documents and jury instructions, we also review testimony, opening arguments, and closing arguments." *Id.* (internal quotation marks and citation omitted). Under the modified *Blockburger* test, "if we determine that one of the offenses subsumes the other offense," we will conclude that the defendant's right to be free from double jeopardy has been violated and "punishment cannot be had for both." *Porter* 2020-NMSC-020, ¶ 20 (internal quotation marks and citation omitted).

**{27}** With these double jeopardy principles in mind, we now turn to Defendant's double description claims.

## D. Burglary and Breaking and Entering

**{28}** Defendant's first double description claim arises from the sixth burglary, which occurred at Bailey's Chimney. Defendant contends that his convictions for Count 6, nonresidential burglary, and Count 15, breaking and entering, were based on unitary conduct, not intended by our Legislature to be punished separately, and therefore, one of these two convictions must be vacated. The State concedes that Defendant's conviction for both burglary and breaking and entering violate double jeopardy and that one of the convictions must be vacated. While this Court is not bound by the State's concessions, *see State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130, we agree with the State.

**{29}** We begin by considering whether the conduct underlying Defendant's convictions was unitary. Here, the evidence shows that the entry into the building required for nonresidential burglary, achieved by prying open the door, was the same conduct relied on to prove that Defendant broke into the building for his conviction for breaking and entering. The conduct relied on for conviction of both offenses was therefore unitary.

**{30}** We next determine "whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25. In *Begaye*, our Supreme Court addressed the intent of the Legislature after finding in that case that Defendant's burglary and breaking and entering convictions were based on unitary conduct. 2023-NMSC-015, ¶¶ 2-3. Much like Defendant here, the defendant in *Begaye* was charged with both nonresidential burglary and breaking and entering based on his entry of a business by breaking a window and climbing through it. *See id.* ¶¶ 2-4. The Court recognized that burglary required "the additional element of a specific intent to commit a theft therein" and that, in certain circumstances, burglary could "be committed without a physical breaking." *Id.* ¶ 35. Nonetheless, the Court found that the defendant's breaking and entering conviction was subsumed within his burglary conviction and that, where the burglary was accomplished by breaking and entering, the Legislature did not intend to create separately punishable offenses. *Id.*

**{31}** Here, the jury was instructed, and Defendant was convicted of burglary based on his obtaining unauthorized entry "by the breaking of the front door." Defendant, therefore, under the principles of law recognized by *Begaye*, cannot also be convicted and punished for breaking and entering. *See id.* Defendant's conviction for breaking and entering is, therefore, subsumed into his conviction for burglary and the "inquiry is over." *See id.* (internal quotation marks and citation omitted).[2]

---

[2]We briefly note that Defendant's reliance on *State v. Ramirez*, 2008-NMCA-165, ¶ 15, 145 N.M. 367, 198 P.3d 866, is misplaced. The decision in *Ramirez* is based on the particular terms of the shoplifting statute, and not on the general principles of double jeopardy applicable to this case.

**{32}** Accordingly, one conviction must be vacated and, where "both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court." *See Porter*, 2020-NMSC-020, ¶ 42. As both nonresidential burglary, and breaking and entering, are fourth degree felonies, *see* § 30-16-13(B); § 30-14-8(B), the choice of which of the convictions to vacate lies with the sound discretion of the district court. We, therefore, remand this case to the district court to determine which conviction to vacate.

### E. Burglary and Larceny

**{33}** Defendant's next double description claims relate to his convictions for both burglary and larceny. Defendant was convicted of larceny, as well as nonresidential burglary for his conduct at the following businesses: (1) Popolo's Games; (2) Koko's on September 4, 2018; (3) Southwest Wellness; (4) Koko's on October 1, 2018; and (5) Bailey's Chimney. Defendant argues that all five of these burglary and larceny convictions are based on unitary conduct. The State argues that for each of these five convictions, the crime of burglary was completed before the crime of larceny began. We agree with the State and explain.

**{34}** To determine whether the conduct underlying Defendant's convictions was unitary, we first review the elements of the offenses and instructions provided to the jury. Nonresidential burglary "consists of the unauthorized entry of any . . . structure, movable or immovable, with the intent to commit any felony or theft therein." Section 30-16-3. "Larceny consists of the stealing of anything of value that belongs to another." Section 30-16-1(A). Our Supreme Court has previously explained that the "gravamen" of burglary is "the unauthorized entry with felonious intent." *State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 41, 285 P.3d 622. Most importantly for our analysis, "[t]he crime of burglary is complete when there is an unauthorized entry with the requisite intent." *State v. Martinez*, 1982-NMCA-053, ¶ 14, 98 N.M. 27, 644 P.2d 541. "It is this entry or invasion that is the harm created by the act of burglary and that the statute punishes." *Muqqddin*, 2012-NMSC-029, ¶ 41.

**{35}** The burglary in each of Defendant's five convictions was complete when Defendant entered the business with the intent to commit a felony—in each of these cases that felony was larceny. Defendant's conviction for burglary did not depend on Defendant actually stealing anything. *See id.* ¶ 39 (stating that larceny "is not necessary to commit burglary"). Larceny requires the element of stealing; *State v. McAfee*, 1967-NMSC-139, ¶ 18, 78 N.M. 108, 428 P.2d 647 ("Since stealing is a necessary element of larceny but is not a necessary element of burglary, larceny is not necessarily involved in a burglary."). Therefore, the elements of the charged offenses indicate that Defendant's convictions were based on distinct conduct.

**{36}** Our Supreme Court's recent decision in *Phillips* is dispositive. The Court held that "[u]nitary conduct is not present when one crime is completed before another is committed." 2024-NMSC-009, ¶ 38 (internal quotation marks and citation omitted). There is a clear distinction here between the completion of the burglary with

Defendant's entry into the business and the later taking and carrying away of money and equipment or goods by Defendant in every one of the incidents where Defendant was convicted of both burglary and larceny. The conduct at issue in convicting Defendant of burglary and larceny was separate, distinct, and therefore nonunitary. We, therefore, need not continue our analysis. *See Swafford*, 1991-NMSC-043, ¶ 25 ("Only if the first part of the test is answered in the affirmative . . . will the double jeopardy clause prohibit multiple punishment in the same trial.").

## F.     Burglary and Criminal Damage to Property

**{37}**     Defendant's final double description claim relates to his burglary and criminal damage to property convictions. Defendant contends that his burglary and criminal damage to property convictions for his conduct at Popolo's Games, Southwest Wellness, and Bailey's Chimney were based on unitary conduct, and was not intended by the Legislature to be punished separately. The State disagrees, arguing that Defendant's convictions for nonresidential burglary and criminal damage to property are not based on unitary conduct because the crime of criminal damage to property was completed before the crime of nonresidential burglary began.

**{38}**     Our examination of the record in this case shows that the sole property damage at Popolo's Games argued and proved by the State was the damage to the front door in forcing it open before Defendant picked up his bag and entered Popolo's through the damaged front door. We do not agree with the State that the fact that Defendant picked up his bag after forcing the front door open sufficiently separates the breaking of the door from Defendant's unauthorized entry so as to make the conduct nonunitary. The amount of time between the two events was minimal, the damage to the front door was an integral part of the burglary as the State alleged it was committed. Therefore, we conclude that the conduct underlying these two convictions was unitary.

**{39}**     We look next at the second prong of the double description analysis: whether the Legislature intended to separately punish the damage to a door caused by a defendant's forced entry when that defendant is convicted of burglary based on that same unauthorized entry. Neither statute expressly states legislative intent to allow separate punishment. Because both criminal damage to property and burglary can be committed in multiple ways, we rely on the modified *Blockburger* test. *See Begaye*, 2023-NMSC-015, ¶ 17.

**{40}**     We are guided in this analysis by our Supreme Court's decision in *Begaye*. As previously discussed in our analysis of breaking and entering and burglary, although recognizing that forcible entry is not an essential element of burglary, our Supreme Court found that the Legislature did not intend that forcible entry be punished separately from and in addition to burglary. The Court treated the manner of entry by breaking a window or prying open a door when that is the State's theory as conduct intended by the Legislature to be contemplated by and subsumed within the crime of burglary. Although the crime addressed by our Supreme Court in *Begaye* was breaking and entering, and not criminal damage to the door caused by the unauthorized entry, we do

not see a meaningful distinction. The Legislature was undoubtedly aware that breaking into a building necessarily causes some damage to the door that is pried open or to the window that is broken. It follows logically from the Legislature's intent not to punish the breaking of the window in *Begaye* separately, that the Legislature also did not intend to punish separately damage to property based on that same broken window or broken door. We therefore agree with Defendant that his conviction for both burglary and criminal damage to property for his conduct at Popolo's Games violates double jeopardy and the lesser criminal damage to property conviction, Count 12, must be vacated. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (stating "where one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence").

**{41}**　We turn next to the conviction for Defendant's conduct at Southwest Wellness and Bailey's Chimney. Unlike the two convictions at Popolo's Games where the only evidence of damage to property was the damage to the front door by Defendant's entry, at both Southwest Wellness and Bailey's Chimney the State presented evidence of damage to property inside the business that began after the burglary was completed (by unauthorized entry with intent to commit a felony). *Muqqddin*, 2012-NMSC-029, ¶ 41. The relevant test is whether a jury could have reasonably found independent factual bases for the burglary and the criminal damage to property. "Similar statutory provisions sharing certain elements may support separate convictions and punishments where examination of the facts presented at trial establishes that the jury reasonably could have inferred *independent factual bases* for the charged offenses." *State v. Serrato*, 2021-NMCA-027, ¶ 27, 493 P.3d 383 (internal quotation marks and citation omitted).

**{42}**　In the charges involving the burglary at Southwest Wellness, though there was some evidence of minor damage to property inside the building, the State did not rely on that evidence in its closing argument. The State instead relied solely on the evidence that Defendant had damaged the door in forcibly entering to argue that the jury should convict Defendant of criminal damage to property. Given the direction from the prosecution, we do not believe that a reasonable juror would have turned to other evidence, not included in the State's theory of the case, to convict Defendant of criminal damage to property. Defendant's conviction of burglary, Count 4, and criminal damage to property, Count 13, therefore, violate double jeopardy. Because criminal damage to property is the lesser crime, Count 13 must therefore, be vacated. *See Montoya*, 2013-NMSC-020, ¶ 55.

**{43}**　Turning finally to the convictions for burglary and criminal damage to property exceeding $1,000 at Bailey's Chimney, the evidence presented supports the jury's finding of more than $1,000 damages based solely on the damage to property caused by Defendant after he gained entry to the building, and the crime of burglary was completed. The State introduced into evidence an email from the owner of Bailey's to the district attorney's office describing damage to a Sentry Safe, and two four-drawer filing cabinets, exceeding $1,500. The owner valued the damage to the business's filing cabinets alone at approximately $1,200. These facts are sufficient to support the inference that the jury's conviction of criminal damage to property at Bailey's Chimney

was reasonably based on nonunitary conduct. Therefore, there is no double jeopardy violation based on Defendant's conviction of both burglary and criminal damage to property for his conduct at Bailey's Chimney.

## II.      Defendant's Sentence

**{44}**      Defendant contends that he was sentenced in this case based, at least in part, on the district court's consideration of uncharged crimes. Defendant acknowledges that he failed to preserve the sentencing challenge that he now makes on appeal and asks this Court to exercise its discretion to review for fundamental error. *See* Rule 12-321(B)(2) NMRA ("This rule does not preclude . . . the appellate court . . . from considering . . . issues involving . . . fundamental error . . . or . . . fundamental rights of a party."). The first step in reviewing for fundamental error is to determine whether an error occurred. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 8, 141 N.M. 801, 161 P.3d 846. If an error occurred, we then consider whether the error was fundamental. *Id.*

**{45}**      Here, Defendant relies on the amended judgment and sentence entered by the district court in which the court notes that Defendant "is suspected of committing more than forty . . . burglaries in the Eighth Judicial District" as the basis for his claim that the court sentenced him based on uncharged crimes.

**{46}**      Following the portion cited by Defendant, the district court states,

> [D]efendant has been convicted by a jury of his peers of six . . . burglaries in the County of Taos. [D]efendant has demonstrated to [being] more than a serial offender, but one of the most prolific and skilled burglars that has come before the court in this district. The severity of the sentence below is justified by the extreme pattern of criminal conduct, continued recidivism, and [D]efendant's incredibly detrimental impact on the local community.

When the district court's statement is taken in context, where the prosecutor argued without objection that the court should consider the more than forty burglaries, we agree that the court did consider those burglaries. Had an objection been made, resentencing would likely be required.

**{47}**      Given, however, that our review is for fundamental error, we do not find the error that occurred here was either an offense to the integrity of the sentencing proceeding or that the sentence itself was unfair. Recidivism is an appropriate consideration at sentencing; here there was ample evidence of recidivism without relying on the more than forty burglaries uncharged. Indeed, the district court explicitly found Defendant to be "a serial burglar" based on properly considered convictions in Alaska. It therefore was not fundamental error for the district court to impose the sentence it chose.[3]

---

[3]We also reject Defendant's unpreserved claim that he was not given adequate notice of the district court's intent to rely on the forty uncharged burglaries. Defendant's agreement to proceed immediately to

## III.    The Search Warrant for Cell Site Location Records

**{48}**    Lastly, Defendant contends that the search warrant used to obtain cell site location records in this case was a general or "all persons" warrant, in violation of the Fourth Amendment to the United States Constitution, and, therefore, the evidence obtained should have been suppressed, and admitting it at trial was error. Defendant acknowledges that he failed to seek suppression of this evidence in the district court and that he did not object at trial to the admission of the evidence obtained through that warrant. He asks this Court to exercise its discretion to review these claims for fundamental error. *See* Rule 12-321(B)(2)(c). Our review for fundamental error considers: (1) whether an error occurred; and if so, (2) whether the error was fundamental. *See Campos*, 2007-NMSC-021, ¶ 8.

**{49}**    Even assuming that an error occurred in failing to suppress this evidence and in admitting it at trial, Defendant has not adequately explained the harm to his defense at trial, given the overwhelming evidence independent of the cell phone data identifying him as the individual shown in the videos of the various crimes.[4] Nor has Defendant presented a developed argument on the impairment alleged to the integrity of the judicial process. The failure to present such an argument may arise in part from inadequacies in the record because of Defendant's failure to preserve this issue in the district court. Regardless of the reason for Defendant's failure to adequately develop his argument, he has not carried his heavy burden to convince this Court that there was fundamental error requiring reversal of his conviction. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice.").

## CONCLUSION

**{50}**    We vacate Defendant's conviction for Count 12, criminal damage to property, at Popolo's Games, and Count 13, criminal damage to property at Southwest Wellness, and remand for resentencing. We remand Counts 6, nonresidential burglary, and 15, breaking and entering, for the district court to decide which of the two counts should be vacated, and for resentencing. Otherwise, we affirm.

---

sentencing, after the prosecution raised the forty burglaries without objection, waived any claim to the adequacy of notice.

4Evidence was presented that Koko's Coffee and Deli circulated a flyer after repeated burglaries at their business showing stills of the burglar obtained from the security camera footage and asking for help in identifying the burglar. The flyer was introduced into evidence at trial so that the jury could examine the photographs. Defendant's sister-in-law testified that she saw the flyer and identified Defendant to law enforcement and to the jury as the individual pictured on the flyer. The Taos police chief testified that he had reviewed the Ring camera footage from the attempted burglary at Koko's, which included audio of the burglar speaking to someone on a cell phone. The police chief, without objection, identified the burglar's voice on that audio as Defendant's voice. Other evidence presented at trial linking Defendant to these two burglaries included security footage showing that the burglar was wearing shoes identical to those worn by Defendant at the time of his arrest, and evidence showing that pry tools, backpacks, gloves and bandanas identical to those depicted in the security footage were collected from Defendant's vehicle.

**{51}**    **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**